## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AQUENDIUS LANDRY** | **CIVIL ACTION** |
| **VERSUS** | **NO.  12-1972** |
| **BURL CAIN, WARDEN** | **SECTION "H"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    State Factual and Procedural Background

The  petitioner, Aquendius Landry, ("Landry") is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On November 21, 2006, Landry was charged by Bill of Information in Assumption Parish with the attempted first degree murder of Anya Ewell.[3]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 4, Bill of Information, 11/21/06.

He entered a plea of not guilty at his arraignment on December 4, 2006.[4]  A year later, on December 18, 2007, the State amended the charge to attempted second degree murder, to which Landry also entered a plea of not guilty.[5]

The record reflects that Landry is the father of Ewell's two children.[6]  He stayed with her on occasion at her trailer in Assumption Parish, although he lived with his grandfather, Walter Robinson, in Labadieville, Louisiana.  On September 27, 2006, Landry, who had recently been released from jail, called Ewell, because he wanted to visit her.  She told him that he could not come over, because she had a protective order against him.  About twenty minutes after the phone call, Landry arrived at the trailer, and he asked her to come outside to speak to him.  When she went outside, Landry brought her to his vehicle, a red Ford Taurus, and they got in the back seat.  Landry's brother, Lormatina, was in the driver's seat.

Following Landry's instructions on where to go, Lormatina drove to a predetermined area on Hard Time Road in Napoleonville.  Hard Time Road is a remote gravel and dirt road, and the nearest house was about two-and-a-half miles away.  During the drive, Landry told Ewell that he was going to "show [her] by playing with him."  Landry thought Ewell was seeing someone else, and he was going to exact retribution for her infidelity.

When they arrived at the location, Landry and Lormatina exited the car, and Landry pulled Ewell out of the vehicle.  Landry held her on the ground and told Lormatina to hand him a red gas

---

[4]St. Rec. Vol. 4 of 4, Minute Entry, 12/4/06.

[5]St. Rec. Vol. 4 of 4, Minute Entry, 12/18/07.

[6]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  *State v. Landry*, 5 So.3d 317 (La. App. 1st Cir. 2009) (Table); *State v. Landry*, No. 2008-1589, 2009 WL 368612, at *1 (La. App. 1st Cir. Feb. 13, 2009); St. Rec. Suppl. Vol. 1 of 1, 5th Cir. Opinion, 2008-KA-1589, pp. 2-3, 2/13/09.

can, which he did.  Landry poured gasoline on Ewell's upper body and lit her on fire with a lighter.  Ewell rolled around on the ground until the fire extinguished.  Landry then dowsed her with gasoline, and again set her on fire.  Ewell rolled on the ground again.  She rolled to the opposite side of the road into a ditch, which had shallow water in it.  Again, she extinguished the fire.

After searching for her, Landry found her in the ditch.  He picked her up, placed her in his car, and drove her to his grandfather's house.  Mr. Robinson then took Ewell to Assumption Community Hospital.

Ewell's injuries were severe and life-threatening.  She suffered second and third degree burns to her upper body.  She was intubated, treated, and stabilized at Assumption Community Hospital.  Several hours later, she was airlifted to Burn Center at Baton Rouge General Hospital.

Dr. Ernest J. Mencer, a general surgeon who treated her at the burn center, determined that Ewell had second-degree flame and chemical burns to fifty percent of her total body surface.  He testified at trial that, clinically, there is no significant difference in a deep second-degree burn and a third-degree burn since both burns require skin grafting.  Ewell underwent extensive medical care, including skin-grafting surgeries to her face, back, and neck.  She also had skin grafting on her right foot, which was burned so deep that tendons were exposed.

Landry was tried before a jury on December 19 and 20, 2007, and he was found guilty as charged of attempted second degree murder.[7]  On May 20, 2008, the Trial Court sentenced Landry

---

[7]St. Rec. Vol. 4 of 4, Trial Minutes, 12/19/07; Trial Minutes, 12/20/07; St. Rec. Vol. 1 of 4, Verdict of the Jury, 12/20/07; St. Rec. Vol. 2 of 4, Trial Transcript, 12/19-20/07; St. Rec. Vol. 3 of 4, Trial Transcript (continued), 12/19-20/07.

to serve fifty years in prison at hard labor and without benefit of parole, probation, or suspension of sentence.[8]  The Court denied Landry's motion to reconsider the sentence.[9]

On direct appeal from his conviction, Landry's counsel raised two errors and sought an errors patent review:[10] (1) the Trial Court erred in admitting the hearsay testimony of the nurse under the excited utterance exception which violated his confrontation rights; and (2) the evidence was insufficient to support the verdict and prove specific intent to kill.  On February 13, 2009, the Louisiana First Circuit found no errors patent on the face of the record and affirmed the conviction and sentence.[11]  The Court held that the nurse's testimony was not hearsay and that otherwise the referenced statements of the victim met the excited utterance exception to the hearsay rule.  The Court also held that the confrontation clause challenge was not preserved for appeal by contemporaneous objection at trial and otherwise was without merit.  The Court also found that the insufficient evidence claim was not procedurally proper under La. Code Crim. Proc. Ann. art. 821 and otherwise was without merit.

The Louisiana Supreme  Court denied Landry's subsequent writ application without stated reasons on December 11, 2009.[12]  Landry's conviction and sentence became final 90 days later, on March 11, 2010, because he did not file a writ application with the United States Supreme Court.

---

[8]St. Rec. Vol. 4 of 4, Sentencing Minutes, 5/20/08; St. Rec. Vol. 2 of 4, Sentencing Transcript, 5/20/08.

[9]St. Rec. Vol. 1 of 4, Reasons for Sentencing, 5/20/08; Motion to Reconsider Sentence, 5/22/08; Trial Court Order, 5/23/08.

[10]St. Rec. Vol. 4 of 4, Appeal Brief, 2008-KA-1589, pp. 6, 9 (dated 9/16/08); *State v. Landry*, 2009 WL 368612, at *2, *5; St. Rec. Suppl. Vol. 1 of 1, 5th Cir. Opinion, 2008-KA-1589, pp. 3, 9, 2/13/09.

[11]*Landry*, 2009 WL 368612, at *1; St. Rec. Suppl. Vol. 1 of 1, 5th Cir. Opinion, 2008-KA-1589, 2/13/09; St. Rec. Vol. 4 of 4, 1st Cir. Notice of Judgment, 2008-KH-1589, 2/13/09.

[12]*State v. Landry*, 23 So.3d 911 (La. 2009); St. Rec. Suppl. Vol. 1 of 1, La. S. Ct. Order, 2009-KO-0681, 12/11/09; La. S. Ct. Writ Application, 09-KO-681, 3/26/09 (postal metered 3/12/09, dated 3/9/09).

*Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On June 4, 2010, Landry submitted an application for post-conviction relief to the Trial Court in which he raised three grounds for relief:[13] (1) he received ineffective assistance of counsel when counsel failed to challenge the State's case after the State withheld evidence related to clothing seized from the home of Landry's brother; (2) the State relied on evidence obtained by unlawful search and seizure; and (3) the State withheld exculpatory evidence regarding clothing seized from his brother's home.  After receiving a response from the State and appointing counsel for Landry, the Trial Court held a hearing on September 20, 2010.[14]  The Court reviewed the arguments raised in the application and denied the application without clearly stated reasons.  On October 19, 2010, the Court issued a written judgment memorializing the prior oral order.[15]

In the meantime, on October 12, 2010, Landry submitted a writ application to the Louisiana First Circuit challenging the Trial Court's ruling.[16]  The Court denied the application on the showing made, because Landry failed to attach the appropriate documents as required by La. App. R. 2-18.7 and 4-9.[17]  The Court instructed Landry that he could file a proper writ application on or before March 17, 2011.

---

[13]St. Rec. Vol. 1 of 4, Application for Post-Conviction Relief, 6/8/10 (dated 6/4/10).

[14]St. Rec. Vol. 4 of 4, Hearing Minutes, 9/20/10; St. Rec. Vol. 2 of 4, Transcript of Post-Conviction Hearing, p. 8, 9/20/10; St. Rec. Vol. 1 of 4, State's Answer, 7/30/10.

[15]St. Rec. Vol. 1 of 4, Trial Court Judgment, 10/19/10.

[16]St. Rec. Suppl. Vol. 1 of 1, 1st Cir. Writ Application, 2010-KW-1906, 10/13/10 (dated 10/12/10).

[17]St. Rec. Vol. 4 of 4, 1st Cir. Order, 2010-KW-1906, 1/14/11; 1st Cir. Certificate of Mailing, 1/14/11.

In addition to this extended time, on February 11, 2011, Landry also submitted a notice of his intent to file a writ application with the Trial Court, and was given until April 1, 2011 to do so.[18] He presented his corrected writ application to the Louisiana First Circuit that same day seeking review of the denial of his application for post-conviction relief.[19] The appellate court denied the application without stated reasons on May 23, 2011.[20] The Louisiana Supreme Court also denied Landry's related writ application without stated reasons on March 30, 2012.[21]

## II.    Federal Petition

On August 9, 2012, the clerk of this Court filed Landry's federal petition for habeas corpus relief in which he raised four grounds for relief:[22] (1) his constitutional rights were violated when the State introduced hearsay testimony of Yvette Boudreaux; (2) his Fourth Amendment right against unreasonable search and seizure was violated; (3) he was denied due process when the State withheld exculpatory evidence; and (4) he received ineffective assistance of counsel for failure to address the State's withholding of evidence.[23]

The State filed an answer and memorandum in opposition to Landry's petition arguing that Landry's claims of inadmissible hearsay, ineffective assistance of counsel, and withheld evidence

---

[18]St. Rec. Vol. 1 of 4, Notice of Intent, 2/16/11 (dated 2/11/11).

[19]St. Rec. Vol. 4 of 4, 1st Cir. Writ Application, 2011-KW-0264, 2/14/11 (dated 2/11/11).

[20]St. Rec. Vol. 4 of 4, 1st Cir. Order, 2011-KW-0264, 5/23/11.

[21]*State ex rel. Landry v. State*, 85 So.3d 105 (La. 2012); St. Rec. Suppl. Vol. 1 of 1, La. S. Ct. Order, 2011-KH-1259, 3/30/12; Cover Letter, 2011-KH-1259, 6/8/11; St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 11-KH-1259, 6/16/11 (postal metered 6/13/11, dated 6/8/11).

[22]Rec. Doc. No. 3-2, p. 2.

[23]Landry and the State provided inconsistent reference numbers for the issues.  The Court will use this numbering system throughout its review.

are meritless.[24]   The State also urges that Landry's Fourth Amendment claim of illegal search and

seizure is not to be considered by the Court.   Further, the State argued that, to the extent Landry

urges a claim of violation of his Confrontation Clause rights, the claim is barred from review based

on the state courts' finding that it was waived due to a lack of contemporaneous objection and

alternatively, that the claim is meritless.

## III.   **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-

132, 110 Stat. 1214,[25] applies to this petition, which is deemed filed in this Court no later than July

17, 2012.[26]   The threshold questions in habeas review under the amended statute are whether the

petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in

state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in

"procedural default" on a claim.   *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing

28 U.S.C. § 2254(b), (c)).

---

[24]Rec. Doc. Nos. 9, 10.

[25]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[26]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Landry's federal habeas petition on August 9, 2012, when the filing fee was paid.  Landry dated his signature on the petition on July 17, 2012. This is the earliest date appearing in the record on which he could have delivered the pleadings to prison officials for e-mailing to the Court.

Contrary to this Court's order, the State failed to address the timeliness of the petition and exhaustion.  Nevertheless, the Court finds that the petition was timely filed and the claims were exhausted in the state courts.

The State has argued the procedural default of Landry's Confrontation Clause issue raised under *Crawford v. Washington*, 541 U.S. 36 (2004).[27]  Although Landry cites to *Crawford*, he does not specifically frame his hearsay argument under the Confrontation Clause as he did in the state courts.  Out of an abundance of caution, to the extent he intended to do so, the Court will consider the procedural default defense as to any claim urged under *Crawford*.

## IV.    Procedural Default (Claim No. 1, under the Confrontation Clause and *Crawford*)

The State recognizes that Landry's first claim related to hearsay evidence, as urged as a Confrontation Clause issue under *Crawford*, is in procedural default, having been dismissed by the state courts as procedurally barred from review.  Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either

---

[27]In *Crawford*, the Supreme Court reiterated that the Sixth Amendment's Confrontation Clause gives the accused "[i]n all criminal prosecutions, . . . the right . . . to be confronted with the witnesses against him." *Crawford*, 541 U.S. at 54.  The Supreme Court held that the Confrontation Clause permits admission of "[t]estimonial statements of witnesses absent from trial . . . only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id*. at 59.  Testimonial statements include "*ex parte* in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id*. at 51 (citations and quotations omitted).

direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

This claim was raised by Landry on appeal in connection with the admissibility of the testimony from Yvette Boudreaux, the nurse to whom the victim provided a detailed accounting of the events that took place.[28] The Court addressed the issue under the rules of hearsay evidence noting that was the only basis for trial counsel's objection thereto. The Court further recognized that Landry argued on appeal that the admission of Boudreaux's testimony also violated the Confrontation Clause as set forth in *Crawford*. The Court found that Landry did not lodge a contemporaneous objection at trial under either the Confrontation Clause or *Crawford*, and the argument was not preserved for appeal, citing La. Code Evid. Ann. art. 103(A)(1), La. Code Crim. Proc. Ann. art. 841(A), and *State v. Young*, 764 So.2d 998, 1005 (La. App. 1st Cir. 2000). The Court alternatively determined that the claim otherwise was without merit since both Boudreaux and the victim testified at trial.

The Louisiana First Circuit's ruling was the last reasoned decision on the issue. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

---

[28]*Landry*, 2009 WL 368612, at *4-*5; St. Rec. Suppl. Vol. 1 of 1, 5th Cir. Opinion, 2008-KA-1589, pp. 8-9, 2/13/09.

The Court must consider whether the bars to review relied upon by the Louisiana courts prohibit consideration of Landry's Confrontation Clause/*Crawford* argument on federal habeas corpus review.  As discussed above, for a state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

### A.   Independent and Adequate

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar. *Amos*, 61 F.3d at 338 (citation omitted). In addition, it also is well settled that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).  The Court here needs only to consider the state courts' procedural basis for denial of relief.

The question of the adequacy of a state procedural bar is itself a federal question. *Beard v. Kindler*, 558 U.S. 53, __, 130 S.Ct. 612, 617 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, __U.S.__, 131 S.Ct. 1120, 1127-28 (2011); *Glover*, 128 F.3d at 902.  A state procedural rule, however, "can be 'firmly established' and 'regularly followed,' – even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard*, 130 S.Ct. at 617-18.

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and citing *West v. Johnson*, 92 F.3d 1385,

1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp. 2d 655, 674 (S.D. Tex. 1999). Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *See Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985) and *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)). In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. *Davis v. Johnson*, No. 00CV684-Y, 2001 WL 611164, at *4 n.10 (N.D. Tex. May 30, 2001); *see also Johnson v. Lensing*, No. 99-0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (La. Code Crim. Proc. Ann. art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843, at *4 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied). It is not, however, within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing

La. Code Crim. Proc. Ann. art. 930.3 as applied to ineffective assistance of counsel claim). Thus, where such foundation and basis does exist, as it does in this case, the bar must stand.

In this case, Louisiana First Circuit relied upon La. Code Evid. Ann. art. 103(A)(1), La. Code Crim. Proc. Ann. art. 841(A), and *State v. Young*, 764 So.2d at 1005 to support its finding that the Confrontation Clause/*Crawford* issue was not preserved for appeal for lack of a contemporaneous objection at trial. Under La. Code Evid. Ann. art. 103(A)(1), an alleged error in an evidentiary ruling can be raised only if a substantial right of a party is affected and a timely objection is made. Under La. Code Crim. Proc. Ann. art. 841(A) "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Relying on these same evidentiary rules, the Court in *State v. Young* held that "[a] defendant is limited on appeal to the grounds for the objection that were articulated at trial." 764 So.2d at 1005.

The state courts' rulings, therefore, were based on Louisiana law setting forth the procedural requirements for preservation and presentation of claims for review. *See Fisher*, 169 F.3d at 300. It is well settled that this type of "contemporaneous objection" rule is an "independent and adequate" state procedural ground which bars federal habeas corpus review. *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977). The ruling, therefore, was independent of federal law and relied strictly on state procedural requirements. *See Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

The failure to preserve a claim under La. Code Crim. Proc. Ann. art. 841 has also been repeatedly recognized as an adequate state ground which bars review by the federal courts in a habeas corpus proceeding. *See Toney v. Cain*, 24 F.3d 240, 1994 WL 243453, at *2 (5th Cir. May 20, 1994) (Table, Text in Westlaw); *Proctor v. Butler*, 831 F.2d 1251, 1253 (5th Cir. 1987); *Riggins v. Butler*, 705 F. Supp. 1205, 1208 (E.D. La. 1989); *Marshall v. Cain*, No. 04-219, 2006 WL

2414073, at *1 (E.D. La. Aug. 18, 2006) (Zainey, J.) (Order adopting Report and Recommendation); *accord*, *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002) (citing *Wainwright*, 433 U.S. at 87-88 (Louisiana's contemporaneous objection rule is an adequate state bar to federal review of a defaulted claims)).  The procedural bar under La. Code Crim. Proc. Ann. art. 841 is adequate to bar federal habeas review of Landry's argument.

The Court also finds that the contemporaneous objection rule found in La. Code Evid. Ann. art. 103(A)(1) is regularly followed by the Louisiana courts to find that a post-verdict review of claims like those raised by Landry is waived without a contemporaneous objection at trial.  *See*, *e.g.*, *State v. Esteve*, 92 So.3d 1058, 1061 (La. App. 1st Cir. 2012) (confrontation clause issue waived with no contemporaneous objection at trial); *State ex rel. L.W.*, 40 So.3d 1220, 1227 (La. App. 1st Cir. 2010) (same); *State v. Johnson*, No. 2007-KA-0634, 2007 WL 2713536, at *3 (La. App. 1st Cir. Sep. 19, 2007) (same); *see also State v. Adams*, 897 So.2d 629, 633-34 (La. App. 1st Cir. 2004) (hearsay); *State v. Brauner*, 782 So.2d 52, 67 (La. App. 4th Cir. 2001) (hearsay); *State v. Young*, 764 So.2d at 1005 (hearsay); *State v. Burmaster*, 710 So.2d 274, 281 (La. App. 3rd Cir. 1998) (hearsay). The bar imposed under La. Code Evid. Ann. art. 103(A)(1) also is adequate to bar review of Landry's claim.

For the foregoing reasons, the bar imposed on Landry's argument under the Confrontation Clause and *Crawford* is supported by the record and is adequate to foreclose review by this federal court.  Because the Louisiana courts' decisions rested on independent and adequate state rules of procedural default, this court will not review Landry's first claim under the Confrontation Clause or *Crawford* unless he has established one of the following exceptions.

B.    **Cause and Prejudice**

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *see Engle v. Isaac*, 456 U.S. 107, 128 & n.33 (1982))

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

In this case, Landry has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts. The Court's review of the record does not support a finding that any factor external to the defense prevented Landry from raising the claims in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474, 477 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Landry's defaulted argument is therefore procedurally barred from review by this federal habeas corpus court.  *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[29]

## C.   <u>Fundamental Miscarriage of Justice</u>

Landry may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  "To satisfy the factual innocence standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt."  *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *see Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  *Glover*, 128 F.3d at 903.

Landry does not present any claim and the record contains nothing to suggest or establish his actual innocence on the underlying conviction.  His claims instead address alleged procedural

_____

[29]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not *required* to raise the procedural default argument sua sponte.  *Id.*

failings in the state criminal proceedings and not his actual innocence.  He presents no evidence or argument of the kind of actual innocence that would excuse his procedural default.  He, therefore, has failed to overcome the procedural bar to his claims.  Landry's first claim (inadmissible hearsay evidence) as urged under the Confrontation Clause or *Crawford* is procedurally barred and that argument will not be addressed.

**V.     Standards of Review on the Merits of the Remaining Claims**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1398 (2011).

## VI.    **Admissibility of Boudreaux's Testimony (Claim No. 1)**

Landry alleges that he was denied a fair trial because Boudreaux was allowed to testify about statements made to her by Ewell at the hospital, and her testimony was inadmissible hearsay. The State argues that the testimony was not hearsay under state law, and its admission did not result in a violation of Landry's constitutional right to a fair trial.

Landry's counsel raised this issue on direct appeal. The Louisiana First Circuit denied relief, finding that the statement met the recognized excited utterance exception to the Louisiana hearsay rule under La. Code Evid. Ann. art. 803(2). The Court further noted that her testimony also fell under the *res gestae* rule under La. Code Evid. Ann. art. 801(D)(4), forming part of the spontaneous utterances made by Ewell under the immediate excitement and pressure of the events. Alternatively, even if the statements were hearsay, the Court found them to be cumulative and corroborative of other testimony and evidence of Landry's guilt deeming any error in their admission to be harmless. This was the last reasoned opinion on the issue.

Habeas corpus review is, of course, limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir.1992); *see Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859, 861-63 (2011) (federal habeas review does not lie for errors of state law). States are free to implement procedures regarding the admissibility of evidence, provided that those procedures do not infringe on a constitutional guarantee. *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967); *Nees v. Culbertson*, 406 F.2d 621, 624-25 (5th Cir. 1969). Therefore, federal courts do not sit to review the propriety

of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. *Lisenba v. People of the State of California*, 314 U.S. 219, 236-37 (1941); *Swarthout*, 131 S.Ct. at 861-62; *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

To whatever extent, therefore, that Landry argues that Boudreaux's testimony was inadmissible under state law, this court will not review such a claim. The court, instead, will consider Landry's federal constitutional claim only to the extent he claims that the admission of this evidence violated his due process rights.

Claims asserting violation of due process under the Fourteenth Amendment present a mixed question of law and fact. *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000). Under the applicable standard of review, this court therefore must determine if the state court's decision to admit the evidence is contrary to or involved an unreasonable application of Supreme Court precedent.

Due process considerations require this court to consider "whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout*, 131 S.Ct. at 861 (citing *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). To assess whether there has been a procedural due process deprivation, the court must consider whether Louisiana's law provided Landry with a protected interest in having Boudreaux's testimony precluded from his trial. As to substantive due process, the court considers whether the allegedly erroneous admission of her testimony rendered Landry's trial fundamentally unfair. *Roberts v. Thaler*, 681 F.3d 597, 611 (5th

19

Cir. 2012) (the introduction of evidence violates the Due Process Clause of the Fourteenth Amendment if it is so unduly prejudicial that it renders the trial fundamentally unfair) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)).  In this case, there is no due process violation because Boudreaux's testimony was not inadmissible hearsay and did not render the trial fundamentally unfair.

Under Louisiana law, "'[h]earsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted."  La. Code Evid. Ann. art. 801(c).  Hearsay generally is not admissible subject to the exceptions provided by law.  La. Code Evid. Ann. art. 802.  Article 803(2) provides in relevant part as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:  . . .
> **(2) Excited utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Under this provision, Louisiana law allows the testimony of a witness recalling a victim's statements describing the attack or injury by a defendant when that statement is made to the witness within close proximity following the event.  *State v. Morgan*, 34 So.3d 1127, 1143-44 (La. App. 2d Cir. 2010) (friend's testimony was not hearsay when she testified about description of events given by victim who called her and told her that she had just been raped); *see also State v. Blanche*, 92 So.3d 508, 516 (La. App. 2d Cir. 2012) (officer's testimony about victim's statement to him made 40 minutes after the shooting was not hearsay).  The record in this case establishes that, within an hour of when she was burned and while still physically and visibly upset, Ewell described to Boudreaux what occurred to lead to her injuries, and Boudreaux incorporated Ewell's statements

into her notes.  As found by the state courts, the statements were made within a short time period after Landry's last effort to burn her and while she was still emotionally disturbed by and physically suffering from the events she had just endured.

Landry has not shown an error in the state court's allowance of the testimony into evidence. As such, he has failed to establish that the admission of the evidence violated his due process rights or otherwise undermined the fundamental fairness of his trial.

The state court's denial of relief on this issue was not contrary to, or an unreasonable application of, federal law.  Landry is not entitled to relief on this claim.

## VII.   Unreasonable Search and Seizure (Claim No. 2)

Landry alleges that the State introduced evidence seized from his grandfather's property without proving that the warrantless search was valid and with voluntary consent of his grandfather or his brother, Lormatina Landry.  The State contends that this Fourth Amendment issue is not reviewable by this Court since Landry was provided with a full review of his claim in the state courts.

A reading of the trial transcript shows that Landry's grandfather, Walter Robinson, testified at trial that, on the night in question, officers searched his home and seized clothing from underneath his porch.[30]  He did not recall signing a consent form that night, but he did identify his signature on

---

[30]St. Rec. Vol. 3 of 4, Trial Transcript (continued), pp. 254, 259, 12/19-20/07.

the consent form introduced by the State.[31]  The consent form was also identified by Officer Crochet

as the form he obtained from Robinson on the night of the search at his home.[32]

   As noted above, Landry did not challenge the validity of the consent by pretrial motion or

on direct appeal.  Landry raised the issue for the first time on post-conviction review and the matter

was denied without comment by the Trial Court after hearing the argument of Landry's counsel and

the State at the hearing on September 20, 2010.

   Fourth Amendment violations are generally not cognizable on federal habeas review.  *Stone

v. Powell*, 428 U.S. 465, 480-81 (1976).  In *Stone v. Powell*, the United States Supreme Court held

"that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment

claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence

obtained in an unconstitutional search or seizure was introduced at his trial."  *Id*. at 494 (footnotes

omitted).  A "full and fair" hearing as contemplated by *Stone v. Powell* refers to thoughtful

consideration by the factfinder and at least the availability of meaningful appellate review by a

higher state court.  *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting

*O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).

   The United States Court of Appeals for the Fifth Circuit has further interpreted an

"opportunity for full and fair litigation" to mean just that, "an opportunity."  *Caver v. Alabama*, 577

F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert.

denied*, 537 U.S. 1196 (2003).  "If a state provides the processes whereby a defendant can obtain

---

[31]*Id*. at pp. 255, 258, 264-65 (identifying signature) and pp. 258, 259.  There was some confusion during his testimony when he mistakenly indicated that he signed the consent form a few days before trial.  The form he signed before trial was actually the witness notice to appear for trial.

[32]*Id*. at pp. 268-69, 278.

full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Caver*, 577 F.2d at 1192.

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone v. Powell* prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful. *Janecka*, 301 F.3d at 320-21. Even if a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the *Stone v. Powell* bar to apply. *Id*. at 320. The Fifth Circuit also has held that the *Stone v. Powell* bar applies despite an error by the state court in deciding the merits of the Fourth Amendment claim. *Swicegood v. Alabama*, 577 F.2d 1322, 1324-1325 (5th Cir. 1978).

Therefore, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on the merits, the rationale of *Caver* dictates that *Swicegood*'s application of *Stone* despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980); *see also Janecka*, 301 F.3d at 321 (same). Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded. *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987); *Davis*, 803 F.2d at 1372.

Landry does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims. Moreover, "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." *Bailey v. Cain*, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) ( Duval, J.) (order adopting Report and Recommendation).

In this case, the record demonstrates that Landry had ample opportunity to raise a Fourth Amendment claim and did so on post-conviction review for the first time. The record, therefore, demonstrates that Landry was provided with the opportunity to and did present his Fourth Amendment claim, although his efforts were unsuccessful. After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims." *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (quotations and citation omitted). The fact that petitioner may disagree with the state courts' decision to deny relief is not sufficient to overcome the bar in *Stone v. Powell* to federal habeas corpus review. *Janecka*, 301 F.3d at 320-21. The review on post-conviction at all levels of the state courts was sufficient to meet due process requirements.

Landry is not entitled to federal habeas court review of his Fourth Amendment claims. Because he received and exercised the opportunity for a full and fair hearing in the state courts, *Stone v. Powell* bars consideration of his Fourth Amendment claim here.

## VIII.   Withholding of Exculpatory Evidence

Although quite convoluted, under a broad reading, Landry alleges that the State effectively withheld exculpatory evidence, that being Lormatina Landry's clothes, seized with a warrant from

the home of April Landry, Lormatina's wife, at 123 Fertitta Lane, Napoleonville, Louisiana. He appears to base this claim on the contention that there was no copy of the warrant or return on the warrant in the State's file, which was fully shown to counsel during discovery. He asserts that his constitutional rights were violated contrary to the mandate in *Brady v. Maryland*, 373 U.S. 83 (1963). The State argues that Landry has failed to establish a violation of his rights under *Brady*.

Landry raised this claim for the first time in his application for post-conviction relief, which was denied by the state trial court without specified reasons.

A claim under *Brady* is a mixed question of law and fact. *Higgins v. Cain*, 434 Fed. App'x 405, 406 (5th Cir. 2011) (citing *Banks v. Thaler*, 583 F.3d 295, 309 (5th Cir. 2009)). Under the applicable standard of review, this court therefore must determine if the state court's decision to admit the evidence is contrary to or involved an unreasonable application of Supreme Court precedent.

The Supreme Court in *Brady* required the State to produce exculpatory and impeachment evidence for reasons of due process. *Brady*, 373 U.S. at 87. The *Brady* disclosure requirement applies only to evidence that is exculpatory and material to guilt or that is favorable impeachment evidence. *Strickler v. Greene*, 527 U.S. 263, 282 (1999); *Brady*, 373 U.S. at 87. Claims pursuant to *Brady* involve "the discovery, after trial of information which had been known to the prosecution but unknown to the defense." *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (*quoting United States v. Agurs*, 427 U.S. 97, 103 (1976)). Thus, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim." *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980) (italics added); *Kutzner v. Cockrell*, 303 F.3d 333, 336

(5th Cir. 2002) (holding that *Brady* does not require prosecutors to furnish a defendant with exculpatory evidence if that evidence is fully available to the defendant through an exercise of reasonable diligence); *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997) (holding that the State has no duty to lead the defense toward potentially exculpatory evidence if the defendant possesses the evidence or can discover it through due diligence).  *Brady* also does not place any burden upon the prosecution to conduct a defendant's investigation or assist in the presentation of the defense's case.  *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990) (citations omitted); *Bigby v. Cockrell*, 340 F.3d 259, 279 (5th Cir. 2003), *withdrawn and substituted with Bigby v. Dretke*, 402 F.3d 551 (5th Cir. 2005).

Three factors must be considered to evaluate an alleged *Brady* violation: "[1] the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] the evidence must have been suppressed by the State, either willfully or inadvertently; [and 3] prejudice must have ensued."  *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).  Evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quotation omitted).

In *Kyles*, the Supreme Court extended the *Brady* ideal and held that

[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.  But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, see *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196-1197) the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.

*Kyles*, 514 U.S. at 438.

At trial, the State questioned Officer Crochet about the clothing evidence seized pursuant to a warrant on October 3, 2006, from April Landry's home at 123 Fertitta Lane. During his testimony, defense counsel requested a bench conference indicating that he did not know whether the evidence was repetitive, had been tested or was exculpatory to Lormatina Landry.[33] The State replied that it had provided the defense with open-file discovery of the prosecutor's file and the Sheriff's file and they provided him with a copy of the search warrant of her home.[34] Defense counsel denied having it or a copy of the search warrant for Landry's 1992 red Taurus and moved for a mistrial.[35]

The matter was argued at length before the Court outside of the presence of the jury. The state trial court denied the motion and directed the State to give defense counsel copies of both warrants.[36] The State provided the defense with copies of all three of the warrants obtained in the case, one for an original search done inside of Walter Robinson's home, one for the red Taurus, and one for April Landry's home.[37] The prosecutor also agreed to allow defense counsel review the State's entire file, without work product.[38]

The record also reflects that defense counsel in fact had a copy in his file of the evidence list from the seizures, including that of April Landry's house.[39] Acquiescing to this, defense counsel maintained his objection on the basis that the State's file did not contain returns on the three

---

[33]St. Rec. Vol. 3 of 4, Trial Transcript (continued), p. 284, 12/19-20/07.

[34]*Id.*, pp. 284, 287.

[35]*Id.*, pp. 285, 286, 287.

[36]*Id.*, pp. 290-91.

[37]*Id.*, pp. 291-92.

[38]*Id.*, pp. 295-96.

[39]*Id.*, pp. 299-300.

subpoenas executed in the case.[40]  It was made clear to the Court by the State and the investigating officers present in the courtroom that no returns were ever prepared; instead, the evidence list, which defense counsel had, was created.  After much discussion, the Trial Court had to consider whether the failure of the officers to file a return on any of the three subpoenas somehow invalidated the subpoenas and entitled the defense to exclude the evidence.[41]

After considering this as a motion to suppress, on the second morning of trial, the Court denied the motion finding that Louisiana law did not require that an official return be filed with the Court as long as the evidence was logged and returned to a court, the sheriff, a clerk, or other designee.[42]

The issue was not revisited again at trial or on direct appeal.  As noted above, the state trial court denied relief under *Brady* at the post-conviction hearing and in its follow-up written order without providing specific reasons for its ruling.

The Court has thoroughly reviewed the record and the Trial Court's comments at trial and at the post-conviction hearing.  The state trial court did not make a finding that any of the evidence, much less any material evidence, was withheld by the State.  The Trial Court instead recognized, as the record shows, that the defense was in fact made aware of the items seized under all three subpoenas by way of the evidence list provided prior to trial.  The record demonstrates that defense counsel had the evidence list in his case file.  Counsel also was aware that the subpoenas existed as

---

[40]*Id.*, pp. 301-303.

[41]*Id.*, pp. 309-311.

[42]*Id.*, pp. 315-316.

28

he recalled during argument that the subpoenas were referenced in the police reports he had in his possession.

With respect to the subpoena returns, as the state trial court noted, "they can't make one if they don't have it."[43]  In other words, the State can not produce what does not exist.  The *Brady* decision itself only requires that the State produce that which is within its control.  *Accord Kyles*, 514 U.S. at 438.  There is no requirement that the State create documentation when none exists.

The record does not establish that the subpoenas or the lack of returns constituted *Brady* material at all, since their existence and the evidence seized under their authority were known by or available to the defense prior to and during trial.  *Accord Lawrence*, 42 F.3d at 257 (*Brady* only applies to matters discovered after trial); *Brown*, 628 F.2d at 473.

Landry has failed to establish that the State withheld any *Brady* evidence prior to or during his trial, which led to the conviction at issue.  The state courts' denial of relief on this claim was not contrary to or an unreasonable application of federal law.  He is not entitled to relief on this claim.

## IX.     <u>Ineffective Assistance of Counsel</u>

Landry alleges that his trial counsel provided ineffective assistance when he failed to challenge or address evidence that was withheld by the State.  As in his *Brady* claim, Landry alleges that the State withheld clothing evidence that was illegally seized from his brother's home.  When the State attempted to introduce the evidence at trial, defense counsel objected to its admissibility on the basis that the evidence was not provided to him in discovery.  Under a broad reading, Landry appears to argue that counsel was ineffective because he did not acquire the withheld evidence before trial to subject it to a meaningful challenge.

---

[43]*Id.*, p. 301.

The State argues that Landry has failed to establish a violation of his rights by counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). This claim was also denied without stated reasons by the state trial court on post-conviction review.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009). The question is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The appropriate standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan*, 980 F.2d at 296. In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . .

30

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S.Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S.Ct. at 792.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross*, 694 F.2d at 1012).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."

*Harrington*, 131 S.Ct. at 788.   The *Harrington* Court went on to recognize the high level of

deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and
> when the two apply in tandem, review is doubly so.   The *Strickland*
> standard is a general one, so the range of reasonable applications is substantial.   Federal habeas
> courts must guard against the danger of equating unreasonableness under *Strickland*
> with unreasonableness under § 2254(d).   When § 2254(d) applies, the question is not
> whether counsel's actions were reasonable.   The question is whether there is any
> reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential."   *Cullen*,

131 S.Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).   The federal courts

must take a "highly deferential" look at counsel's performance under the *Strickland* standard through

the "deferential lens of § 2254(d)."   *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*,

556 U.S. at 121 n.2).

Under a broad reading, Landry alleges that his counsel was deficient for failing to discover

that the police executed warrants and the State possessed evidence from his brother's home that

could have been challenged at trial.   As discussed previously in this opinion, Landry has not

established that the State withheld any evidence, including the clothing seized from his brother's

home.

Furthermore, to the extent counsel was not fully aware until trial that the clothing evidence

existed, Landry has failed to establish that counsel's delayed discovery was prejudicial to the

defense.   The record demonstrates that, after clarifying the existence of the subpoenas and re-

evaluating the evidence list in his possession, defense counsel was able to thoroughly and adequately

question the State's witnesses about the evidence relied upon by the State.   For example, counsel

32

immediately obtained an overnight continuance to prepare himself with the newly recognized information.  Counsel also thoroughly questioned Officer Lambert about all of the evidence seized through the search warrants he had obtained.  Counsel was also able to garner Lambert's testimony that the red gas can seized and tested did not have Landry's fingerprints on it and that the clothing seized from Lormatina Landry's home was never tested, because the items did not smell of gasoline when they were found.  These are but examples of counsel's demonstrated and competent efforts to challenge the searches and the seized evidence.

Landry has not established that counsel's performance in any way altered the outcome of the trial or negatively impacted the verdict.  To the contrary the record provides ample proof that counsel aggressively challenged the State's case in spite of the delayed discovery of certain matters.

The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, Supreme Court law.  Landry is not entitled to relief on this claim.

## X.   <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Aquendius Landry's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[44]

New Orleans, Louisiana, this 21st day of February, 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[44]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.